**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MONDELĒZ INTERNATIONAL, INC., a Virginia corporation and INTERCONTINENTAL GREAT BRANDS, LLC, a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-05905 |
| ALDI, INC., an Illinois corporation, | ) ) | Hon. Jeremey C. Daniel |
| Defendant. | ) ) | |

**ALDI, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT**

Now comes Defendant Aldi Inc. (mis-named as Aldi, Inc.) ("Aldi"), by and through its

attorneys, Seyfarth Shaw LLP, and for its answer to Plaintiffs' Complaint, states as follows:

**NATURE OF THE ACTION**

**COMPLAINT ¶1:**

This is a Complaint for damages and injunctive relief arising from Defendant Aldi, Inc.'s ("Defendant" or Aldi") use of private label product packaging that blatantly copies and trades upon the valuable reputation and goodwill Mondelēz has developed in its longstanding, highly distinctive, and well-known trade dress for numerous of its cookie and cracker snack products. Defendant has a pattern and practice of engaging in the unlawful behavior underlying Mondelēz's claims. Defendant's actions are likely to deceive and confuse consumers and dilute the distinctive quality of Mondelēz's unique product packaging, and if not stopped, threaten to irreparably harm Mondelēz and its valuable brands. Mondelēz seeks damages and injunctive relief based upon Defendant's willful trademark infringement, trade dress infringement, unfair competition, unjust enrichment and dilution under federal and state law.

**ANSWER:**

Aldi states that the allegations set forth in the first Paragraph 1 contain conclusions of law

as to which no response is required, but to the extent any response is required, Aldi denies the

allegations, including because Aldi lacks sufficient knowledge or information to form a belief as

to the truth of the allegations set forth in the first Paragraph 1, particularly as it relates to

Plaintiffs' alleged trade dress and alleged rights thereto.

## PARTIES

## COMPLAINT ¶1:

Mondelēz International, Inc. is a Virginia corporation with its global corporate headquarters located at 905 West Fulton Market, Suite 200, Chicago, Illinois 60607. Intercontinental Great Brands LLC is a Delaware limited liability company with its principal place of business at 100 Deforest Avenue, East Hanover, NJ 07936. Intercontinental Great Brands LLC is a wholly owned subsidiary of Mondelēz International, Inc. and owner and registrant of Mondelēz International, Inc.'s intellectual property rights in the products alleged in this Complaint.

## ANSWER:

Aldi admits that Mondelez International, Inc. is a Virginia Corporation with its principal

executive headquarters located at 905 West Fulton Market, Suite 200, Chicago, Illinois 60607,

and that International Great Brands LLC is the record title owner of certain United States

trademark registrations associated with certain trademarks alleged in the Complaint. Aldi denies

the allegations in the second Paragraph 1 of the Complaint that Mondelez International, Inc.

owns any rights in and to the trademarks, trade dress and/or other intellectual property rights in

the products alleged in the Complaint as inconsistent with Plaintiffs' allegation that International

Great Brands LLC is the owner of the trademark rights and the fact that International Great

Brands LLC appears to be the record title owner of the United States Trademark registrations for

the trademarks alleged in the Complaint, such that there is a legal presumption that International

Great Brands LLC is the sole and exclusive owner of such trademarks under United States

Trademark Law, 15 U.S.C. § 1115. Aldi also notes that Plaintiffs' allegation in the second

Paragraph 1 that International Great Brands LLC is a wholly owned subsidiary of Mondelez

International, Inc. appears to be inconsistent with International Great Brands LLC's certification

under Local Rule 3.2 and Rule 7.1 of the Federal Rules of Civil Procedure that International

2

Brands LLC is the parent company of International Great Brands LLC and International Great Brands LLC's certification under Local Rule 3.2 and Rule 7.1 of the Federal Rules of Civil Procedure filed before this Court in *Intercontinental Great Brands, LLC v. Ghost, LLC, et al.*, 25 C 04489 (Dkt. 5) that Mondelez International, Inc. is the "ultimate parent corporation" of Intercontinental Great Brands LLC. Aldi lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in the second Paragraph 1, therefore, such allegations are denied.

**COMPLAINT ¶2:**

Mondelēz is informed and believes that Defendant is an Illinois corporation which owns and operates Aldi grocery stores throughout the United States, including in this District.

**ANSWER:**

Aldi admits that it is an Illinois corporation and operates ALDI ® grocery stores in many of the United States, including in this District. Aldi denies the remaining allegations in Paragraph 2.

## JURISDICTION AND VENUE

**COMPLAINT ¶3:**

This Court has subject matter jurisdiction over the claims in this action under 28 U.S.C. §§ 1331, 1338(a) and (b), because this action involves claims of trademark infringement, trade dress infringement, unfair competition, unjust enrichment and dilution arising under the Lanham Act, 15 U.S.C. § 1125. This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367, because the state law claims are so related to the federal claims that they form part of the same case or controversy.

**ANSWER:**

Aldi admits that this Court has original subject matter jurisdiction over the claims alleged in Plaintiffs' Complaint because the claims involve federal questions under federal law, and that this Court can exercise supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a), but denies the remaining allegations of Paragraph 3.

318228615v.2

**COMPLAINT ¶4:**

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(d) because Defendant resides in this District, has infringed Mondelēz's trademark and trade dress rights in this District, and/or a substantial part of the events giving rise to the claims in this action occurred in this District.

**ANSWER:**

Aldi admits that it resides in this District.  Aldi further states that the remaining

allegations set forth in Paragraph 4 are conclusions of law as to which no response is required.

To the extent a response is required, Aldi denies that the Complaint alleges infringement of

Mondelez's trademark rights and lacks sufficient information or knowledge to form a belief as to

the truth of the allegations in Paragraph 4, therefore such allegations are denied.

## FACTS

**COMPLAINT ¶5:**

Mondelēz is one of the world's largest multinational food companies and does business in over 150 countries.  Mondelēz manufactures and sells a wide variety of packaged snacks, including cookies and crackers, in grocery stores, among many other channels, around the world.

**ANSWER:**

Aldi admits that Mondelez does business in the United States and sells packaged snacks,

including cookies and crackers, to grocery stores, including Aldi, in the United States.  Aldi lacks

sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 5.

To the extent an answer to Paragraph 5 is required as to the remaining allegations, Paragraph 5 is

denied.

**COMPLAINT ¶6:**

Mondelēz is a prominent leader in the cookie and crackers snack industry with several universally recognizable and iconic brands sold in the United States including OREO®, WHEAT THINS®, NUTTER BUTTER®, CHIPS AHOY!®, NILLA WAFERS®, RITZ®, and PREMIUM®.

318228615v.2

**ANSWER:**

Aldi denies that Mondelez International, Inc. owns any of the trademark registrations cited in Paragraph 6 and denies that International Great Brands, LLC owns United States trademark registrations for PREMIUM (the registration is for a specific stylized form), NUTTER BUTTER (the registrations exist for a stylized form and for the hyphenated term NUTTER-BUTTER) and NILLA WAFERS (the registration exists for NILLA). Aldi lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 6. To the extent an answer to Paragraph 6 is required, Paragraph 6 is denied.

**COMPLAINT ¶7:**

Consumers instantly recognize snacks sold under these popular food brands through their highly distinctive product packaging.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 7. To the extent an answer to Paragraph 7 is required, Paragraph 7 is denied.

**COMPLAINT ¶8:**

Defendant's business model involves an emphasis on low-priced private label products that resemble the look and feel of well-known brands. For this reason, Defendant is often referred to as a "discount" supermarket. Defendant is well-known for its television advertisements featuring the slogan "like brands, only cheaper."

**ANSWER:**

Aldi admits that Aldi and the ALDI ® brand are well-known as the source of high quality and affordable groceries. Aldi denies the remaining allegations in Paragraph 8.

**COMPLAINT ¶9:**

Defendant is in the business of selling private label cookie and cracker snacks and has a pattern and practice of selling products in packaging that are unacceptable copies of Mondelēz's trade dress. Because of this misconduct, Mondelēz has a history of enforcing its intellectual property rights against Defendant. Indeed, Mondelēz has contacted Defendant on numerous occasions objecting to Defendant's use of confusingly similar packaging and demanding that Defendant cease and desist its unlawful infringement. For example, Mondelēz previously

contacted Defendant about copycats of Mondelēz's OREO® cookie design, TEDDY GRAHAMS® cookies, BELVITA® biscuits, TATE'S BAKE SHOP cookies, and TRISCUIT® crackers. Defendant discontinued and/or changed certain of these infringing products in response to Mondelēz's objections. However, Defendant has continued its pattern and practice of selling products in packaging which infringes the trade dress of numerous Mondelēz products. Specifically, as to the products in suit in this action (shown below), Defendant has ignored Mondelēz's reasonable requests, leaving Mondelēz no choice but to bring this trademark and trade dress infringement, dilution, unfair competition and unjust enrichment action. Defendant's willful infringement must be stopped, and Mondelēz is entitled to recover the significant damages it has suffered.



| Mondelēz Trade Dress | Infringing Aldi Trade Dress |
|---|---|

6



**ANSWER:**

Aldi admits that it sells cracker and cookie products under its own Aldi-exclusive brands, including BENTON'S ®, SAVORITZ™, and other brands, and has sold the products as depicted in Paragraph 9 for years. Aldi further admits that it has used the colors red, blue, yellow, white, and combinations thereof, images of milk with cookies, cheese on crackers, soup being served with crackers, depictions of peanuts with peanut butter crème cookies, wheat with wheat crackers, as well as other commonly used fonts, colors, design elements and/or aesthetically functional other aspects of its packaging for many years without receiving any objection from Mondelez. Aldi further admits that in the past, Mondelez contacted Aldi in confidence and expressed concerns regarding the packaging design of certain Aldi-exclusive products. Aldi

318228615v.2

further admits that for several years after raising its confidential concerns, Mondelez chose not to take any further action or initiate any litigation until the filing of the Complaint. Aldi denies the remaining allegations of Paragraph 9.

**COMPLAINT ¶10:**

Mondelēz is informed and believes that at least some of the products in suit are manufactured and distributed nationally to Aldi stores from a supplier or suppliers located in the State of Ohio.

**ANSWER:**

To the extent Mondelez is referring to Aldi products in suit Aldi denies the allegations of Paragraph 10. To the extent Mondelez is referring to its own products in suit, Aldi lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 10.

## MONDELĒZ'S OREO TRADE DRESS

**COMPLAINT ¶11:**

The OREO brand was first introduced to the United States market in 1912 (the "Oreo cookies"). Oreo cookies are sandwich cookies which consist of two biscuits with a sweet cream filling. Oreo cookies come in a variety of flavors.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 11. To the extent an answer to Paragraph 11 is required, Paragraph 11 is denied.

**COMPLAINT ¶12:**

Oreo cookies have become the world's top selling cookies and are sold in more than 100 countries worldwide.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 12. To the extent an answer to Paragraph 12 is required, Paragraph 12 is denied.

318228615v.2

**COMPLAINT ¶13:**

Since at least as early as 2009, Mondelēz has marketed and sold Oreo cookies in a highly distinctive product packaging (the "OREO Trade Dress") which consumers associate with Mondelēz. The OREO Trade Dress is depicted below.



**ANSWER:**

Aldi denies that the colors blue and white, the use of an image of the product in the center of a package and the use of an image of milk or a milk splash with cookies are distinctive. Aldi lacks sufficient information to form a belief as to the truth of the remainder of the allegations in Paragraph 13. To the extent an answer to Paragraph 13 is required, Paragraph 13 is denied.

**COMPLAINT ¶14:**

The OREO Trade Dress features the following inherently distinctive elements.

a. A prominent cookie consisting of a white filling sandwiched between two black b biscuits marked with a distinctive embossment of ridges forming a rim along the circumference, which is slightly tilted to the right.

b. A predominantly blue background with a lighter blue halo around the cookie;

c. A white milk splash design;

d. A thick, sans-serif white font designating the product name, which is in a curved shape and all capital letters outlined in blue, that begins with the letters 'OR' and partially covers the cookie;

e. A small, thick sans-serif white font for verbiage near the product name;

f.   A logo in white letters, surrounded by a thin white shape, and enclosed in a red background in the upper left corner.

**ANSWER:**

Aldi denies the allegations of Paragraph 14.

**COMPLAINT ¶15:**

Mondelēz has acquired common law rights owing to a long, rich history of continuously using prominent elements of the OREO Trade Dress as demonstrated in Exhibit A.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 15 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required,

Aldi denies the allegations of Paragraph 15.

**COMPLAINT ¶16:**

The OREO Trade Dress is unique, distinctive, arbitrary, and non-functional, meaning it is not essential to its purpose and does not affect its cost or quality. Nor is it competitively necessary to use the OREO Trade Dress in the snack products market. Indeed, there are numerous examples of third parties selling competing products with non-infringing trade dress. *See* Exhibit B. The distinctive features included in the OREO Trade Dress serve the purpose of identifying and distinguishing Oreo cookies from the products of other sellers.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 16 of the Complaint contain

conclusions of law as to which no response is required, but to the extent any response is required,

Aldi denies the allegations.

**COMPLAINT ¶17:**

Mondelēz has spent hundreds of millions of dollars in the last five years alone in connection with advertising and promoting its goods featuring the OREO Trade Dress in the United States market and has enjoyed substantial sales and success. Indeed, Mondelēz has sold over 650 million packages featuring the OREO Trade Dress in the United States market in the last five years alone. Mondelēz's promotion efforts include, among other things, print media, internet advertising (including social media), television commercials, sponsorships, promotions, public relations, in-store promotional and point-of-sale materials.

318228615v.2

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 17. To the extent an answer to Paragraph 17 is required, Paragraph 17 is denied.

**COMPLAINT ¶18:**

Mondelēz has used and continues to use the OREO Trade Dress uniformly and consistently, and as source identifiers of its highly regarded Oreo cookies.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 18. To the extent an answer to Paragraph 18 is required, Paragraph 18 is denied.

**COMPLAINT ¶19:**

As a result of its extensive promotional efforts, advertising, sales, and enforcement, Mondelēz enjoys a highly valuable reputation and goodwill that is symbolized by its OREO Trade Dress, whereby it has become recognized as denoting goods originating from Mondelēz and none other.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 19 of the Complaint contain

conclusions of law as to which no response is required.  To the extent a response is required, Aldi

denies the allegations of Paragraph 19.

**DEFENDANT'S WILLFUL INFRINGEMENT OF OREO TRADE DRESS**

**COMPLAINT ¶20:**

To benefit from the reputation, fame and prestige of the OREO Trade Dress and exploit Mondelēz's marketing effort, Defendant is marketing and selling private label packaged cookie sandwiches using packaging that blatantly copies the distinctive and iconic elements of the OREO Trade Dress (the "Infringing Sandwich Cookie Packaging").  The Infringing Sandwich Cookie Packaging is likely to cause confusion among consumers.  Representative side-by-side comparisons of Mondelēz's OREO Trade Dress and the Infringing Sandwich Cookie Packaging are show as follows:

 

**ANSWER:**

Aldi admits that it sells packaged sandwich cookies. Aldi denies the remaining allegations of Paragraph 20.

**COMPLAINT ¶21:**

Like the OREO Trade Dress, the Infringing Sandwich Cookie Packaging features a prominent cookie consisting of a white filling sandwiched between two black biscuits marked with ridges forming a rim along the circumference, which is slightly tilted to the right; a predominantly blue background, which Mondelēz has featured on its Oreo cookie packaging since 1952, with a lighter blue halo around the cookie; hints of white milk splashes; thick, sans-serif white font designating the product name, which Mondelēz has featured on its Oreo cookie packaging since 1972, and which is in a curved shape and all capital letters outlined in blue, that begins with the letters 'OR' and partially covers the cookie; where both the cookie and product name appear in a substantially similar location on the package as in the OREO Trade Dress; and a small, thick sans-serif white font for verbiage near the product name, which Mondelēz has featured on its Oreo cookie packaging since 1965; and a logo in white letters, surrounded by a thin white shape, and enclosed in a red background in the upper left corner, which Mondelēz has featured on its Oreo cookie packaging since 1960.

**ANSWER:**

Aldi denies the allegations of Paragraph 21.

**COMPLAINT ¶22:**

The Infringing Sandwich Cookie Packaging and the OREO Trade Dress are used in connection with identical goods, namely, packaged sandwich cookies.

12

**ANSWER:**

Aldi admits that it sells packaged sandwich cookies.  Aldi denies the remaining

allegations of Paragraph 22.

**COMPLAINT ¶23:**

Defendant adopted the Infringing Sandwich Cookie Packaging with knowledge of Mondelēz's prior rights in the OREO Trade Dress and with intent to mislead or confuse consumers into believing that Defendant's goods are provided, sponsored, or approved by, or affiliated with, Mondelēz.

**ANSWER:**

Aldi denies the allegations of Paragraph 23.

**COMPLAINT ¶24:**

Given the distinctiveness of the OREO Trade Dress, Defendant's use of nearly identical packaging for identical products, and in the same marketing channels, to the same class of consumers, and is likely to cause confusion regarding the source and nature of Defendant's products, and/or that Defendant's products come from, are affiliated with, or are sponsored or endorsed by Mondelēz, when in fact no such affiliation, sponsorship, or endorsement exists, lessens the distinctiveness of the OREO Trade Dress, and unfairly competes. As a result of Defendant's wrongful activities, consumers have been misled and will continue to be misled, the OREO Trade Dress has been and will continue to be diluted, Defendant has been unjustly enriched, and Mondelēz has suffered and continues to suffer irreparable harm and economic injury.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 24 of the Complaint contain

conclusions of fact and law as to which no response is required, but to the extent any response is

required, Aldi denies the allegations.

**MONDELĒZ'S WHEAT THINS TRADE DRESS**

**COMPLAINT ¶25:**

The WHEAT THINS brand was first introduced to the United States market in 1947 (the "Wheat Thins crackers").

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 25. To the extent an answer to Paragraph 25 is required, Paragraph 25 is denied.

**COMPLAINT ¶26:**

Since at least as early as 2017, Mondelēz has marketed and sold Wheat Thins crackers in a highly distinctive product packaging (the "WHEAT THINS Trade Dress") which consumers associate with Mondelēz. The WHEAT THINS Trade Dress is depicted below:



**ANSWER:**

Aldi denies that the color yellow, the use of ombre effects producing a lighter shade near

the center of a package, the use of images of crackers in connection with cheese, and the use of

an image of wheat in connection with a wheat cracker are distinctive.  Aldi lacks sufficient

information to form a belief as to the truth of the remainder of the allegations in Paragraph 26. To

the extent an answer to Paragraph 26 is required, Paragraph 26 is denied.

**COMPLAINT ¶27:**

The WHEAT THINS Trade Dress features the following inherently distinctive elements:

a.       A predominantly yellow background with an ombre effect producing a lighter shade near, and a progressively darker shade away from, the center of the packaging;

14

   b.  Prominent use of the words `WHEAT' and `THINS' in a blue, serif font in a downward curved shape;

   c.  The word `original' in a bolded white font, against a background consisting of an orange shape and positioned beneath the product name;

   d.  Crackers, crumbs, cheese, and a wheat plant positioned together;

   e.  A logo in white letters, surrounded by a thin white shape, and enclosed in a red background in the upper left corner.

**ANSWER:**

  Aldi denies the allegations of Paragraph 27.

**COMPLAINT ¶28:**

  Mondelēz has acquired common law rights owing to a long, rich history of continuously using prominent elements of the WHEAT THINS Trade Dress, as demonstrated in Exhibit A.

**ANSWER:**

  Aldi states that the allegations set forth in Paragraph 28 of the Complaint contain

conclusions of law as to which no response is required.  To the extent a response is required, Aldi

denies the allegations of Paragraph 28

**COMPLAINT ¶29:**

  The WHEAT THINS Trade Dress is unique, distinctive, arbitrary, and non-functional, meaning it is not essential to its purpose and does not affect its cost or quality. Nor is it competitively necessary to use the WHEAT THINS Trade Dress in the snack products market. Indeed, there are numerous examples of third parties selling competing products with non-infringing trade dress. *See* Exhibit B. The distinctive features included in the WHEAT THINS Trade Dress serve the purpose of identifying and distinguishing Wheat Thins crackers from the products of other sellers.

**ANSWER:**

  Aldi states that the allegations set forth in Paragraph 29 of the Complaint contain

conclusions of law as to which no response is required.  To the extent any response is required,

Aldi denies the allegations of Paragraph 29.

**COMPLAINT ¶30:**

Mondelēz has spent tens of millions of dollars in the last five years alone in connection with advertising and promoting its goods featuring the WHEAT THINS Trade Dress in the United States market and has enjoyed substantial sales and success. Indeed, Mondelēz has sold over 200 million packages featuring the WHEAT THINS Trade Dress in the United States market in the last five years alone. Mondelēz's promotion efforts include, among other things, print media, internet advertising (including social media), television commercials, sponsorships, promotions, public relations, in-store promotional and point-of-sale materials.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 30. To the extent an answer to Paragraph 30 is required, Paragraph 30 is denied.

**COMPLAINT ¶31:**

Mondelēz has used and continues to use the WHEAT THINS Trade Dress uniformly and consistently, and as a source identifier of its highly regarded Wheat Thins crackers.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 31. To the extent an answer to Paragraph 31 is required, Paragraph 31 is denied.

**COMPLAINT ¶32:**

As a result of its extensive promotional efforts, advertising, and sales, Mondelēz enjoys a highly valuable reputation and goodwill that is symbolized by its WHEAT THINS Trade Dress, whereby it has become recognized as denoting goods originating from Mondelēz and none other.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 32 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 32.

**DEFENDANT'S WILLFUL INFRINGEMENT OF WHEAT THINS TRADE DRESS**

**COMPLAINT ¶33:**

To benefit from the reputation, fame and prestige of the WHEAT THINS Trade Dress and exploit Mondelēz's marketing effort, Defendant began marketing and selling private label packaged wheat crackers using packaging that blatantly copies the iconic and distinctive

16

elements of the WHEAT THINS Trade Dress (the "Infringing Wheat Cracker Packaging"). The Infringing Wheat Cracker Packaging is likely to cause confusion among consumers. Representative side-by-side comparisons of Mondelēz's WHEAT THINS Trade Dress and the Infringing Wheat Cracker Packaging are shown as follows:

 

**ANSWER:**

Aldi admits that it sells packaged thin wheat crackers. Aldi denies the remaining

allegations of Paragraph 33.

**COMPLAINT ¶34:**

Like the WHEAT THINS Trade Dress, the Infringing Wheat Cracker Packaging features a predominantly yellow background with an ombre effect producing a lighter shade near, and a progressive darker shade away from, the center of the packaging, which Mondelēz has featured on its Wheat Thins crackers packaging since 2008; prominent use of the word `WHEAT' and a variation of `THINS' in a blue, serif font, which Mondelēz has featured on its Wheat Thins crackers packaging since 2008, in a downward curved shape; the word `original' in a bolded white font, against a background consisting of an orange shape and positioned beneath the product name; and crackers, crumbs, cheese, and a wheat plant positioned together in the bottom half of the background, which Mondelēz has featured on its Wheat Thins crackers packaging since 2004. Further, the packaging of both products features an identical product claim being used on the packaging in a similar format.

**ANSWER:**

Aldi denies the allegations of Paragraph 34.

**COMPLAINT ¶35:**

The Infringing Wheat Cracker Packaging and the WHEAT THINS Trade Dress are used in connection with identical goods, namely, packaged wheat cracker snacks.

17

**ANSWER:**

Aldi admits that it sells packaged thin wheat crackers. Aldi denies the remaining

allegations of Paragraph 35.

**COMPLAINT ¶36:**

Defendant adopted the Infringing Wheat Cracker Packaging with knowledge of
Mondelēz's prior rights in the WHEAT THINS Trade Dress and with intent to mislead or confuse
consumers into believing that Defendant's goods are provided, sponsored, or approved by, or
affiliated with, Mondelēz.

**ANSWER:**

Aldi denies the allegations of Paragraph 36.

**COMPLAINT ¶37:**

Given the distinctiveness of the WHEAT THINS Trade Dress, Defendant's use of nearly
identical packaging for identical products, and in the same marketing channels, to the same class
of consumers, and is likely to cause confusion regarding the source and nature of Defendant's
products, and/or that Defendant's products come from, are affiliated with, or are sponsored or
endorsed by Mondelēz, when in fact no such affiliation, sponsorship, or endorsement exists,
lessens the distinctiveness of the WHEAT THINS Trade Dress, and unfairly competes. As a
result of Defendant's wrongful activities, consumers have been misled and will continue to be
misled, the WHEAT THINS Trade Dress has been and will continue to be diluted, Defendant has
been unjustly enriched, and Mondelēz has suffered and continues to suffer irreparable harm and
economic injury.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 37 of the Complaint contain

conclusions of law as to which no response is required. To the extent any response is required,

Aldi denies the allegations.

## MONDELĒZ'S NUTTER BUTTER TRADE DRESS

**COMPLAINT ¶38:**

The NUTTER BUTTER peanut butter sandwich cookies ("Nutter Butter cookies") were
first introduced to the United States market in 1969.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 38. To the extent an answer to Paragraph 38 is required, Paragraph 38 is denied.

**COMPLAINT ¶39:**

Since at least as early as 2009, Mondelēz has marketed and sold Nutter Butter cookies in a highly distinctive product packaging (the "NUTTER BUTTER Trade Dress") which consumers associate with Mondelēz. The NUTTER BUTTER Trade Dress is depicted below:



**ANSWER:**

Aldi denies that the color red is highly distinctive in connection with the marketing and sale of cookie.   Aldi lacks sufficient information to form a belief as to the truth of the remainder of the allegations in Paragraph 39. To the extent an answer to Paragraph 39 is required, Paragraph 39 is denied.

**COMPLAINT ¶40:**

The NUTTER BUTTER Trade Dress features the following inherently distinctive elements:

    a.      A predominantly red background;

    b.      A prominent cookie consisting of a tan cream filling sandwiched between two slightly darker tan biscuits marked with protruding vertical and horizontal lines which intersect to form a checkered pattern, and which is slightly slanted and surrounded by a halo;

    c.      A thick, stylized white font designating the product name, which is in a curved shape and partially covers the cookie, and of which the first letter of each word is capitalized;

d.      A logo in white letters, surrounded by a thin white shape, and enclosed in a red background in the upper left corner.

**ANSWER:**

Aldi denies the allegations of Paragraph 40 of the Complaint.

**COMPLAINT ¶41:**

Mondelēz has acquired common law rights owing to a long, rich history of continuously using prominent elements of the NUTTER BUTTER Trade Dress, as demonstrated in Exhibit A.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 41 of the Complaint contain

conclusions of law as to which no response is required.  To the extent a response is required, Aldi

denies the allegations of Paragraph 41.

**COMPLAINT ¶42:**

The NUTTER BUTTER Trade Dress is unique, distinctive, arbitrary, and non-functional, meaning it is not essential to its purpose and does not affect its cost or quality. Nor is it competitively necessary to use the NUTTER BUTTER Trade Dress in the snack products market. Indeed, there are numerous examples of third parties selling competing products with non-infringing trade dress. *See* Exhibit B. The distinctive features included in the NUTTER BUTTER Trade Dress serve the purpose of identifying and distinguishing Nutter Butter cookies from the products of other sellers.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 42 of the Complaint contain

conclusions of law as to which no response is required.  To the extent a response is required, Aldi

denies the allegations of Paragraph 42.

**COMPLAINT ¶43:**

Mondelēz has spent tens of millions of dollars in the last five years alone in connection with advertising and promoting its goods featuring NUTTER BUTTER Trade Dress in the United States market and has enjoyed substantial sales and success. Indeed, Mondelēz has sold approximately 150 million packages featuring the NUTTER BUTTER Trade Dress in the United States market in the last five years alone. Mondelēz's promotion efforts include, among other things, print media, internet advertising (including social media), television commercials, sponsorships, promotions, public relations, in-store promotional and point-of-sale materials.

318228615v.2

Mondelēz has used and continues to use the NUTTER BUTTER Trade Dress uniformly and consistently, and as a source identifier of its highly regarded Nutter Butter cookies.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 43. To the extent an answer to Paragraph 43 is required, Paragraph 43 is denied.

**COMPLAINT ¶44:**

As a result of its extensive promotional efforts, advertising, and sales, Mondelēz enjoys a highly valuable reputation and goodwill that is symbolized by its NUTTER BUTTER Trade Dress, whereby it has become recognized as denoting goods originating from Mondelēz and none other.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 44 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 44.

**DEFENDANT'S WILLFUL INFRINGEMENT OF NUTTER BUTTER TRADE DRESS**

**COMPLAINT ¶45:**

To benefit from the reputation, fame and prestige of the NUTTER BUTTER Trade Dress and exploit Mondelēz's marketing effort, Defendant began marketing and selling private label packaged peanut butter sandwich cookies using packaging that blatantly copies the iconic and distinctive elements of the NUTTER BUTTER Trade Dress (the "Infringing Peanut Butter Cookie Packaging"). The Infringing Peanut Butter Cookie Packaging is likely to cause confusion among consumers. Representative side-by-side comparisons of Mondelēz's NUTTER BUTTER Trade Dress and the Infringing Peanut Butter Cookie Packaging are shown as follows:

 

**ANSWER:**

Aldi admits that it sells peanut butter crème filled sandwich cookies. Aldi denies the

remaining allegations of Paragraph 45.

**COMPLAINT ¶46:**

Like the NUTTER BUTTER Trade Dress, the Infringing Peanut Butter Cookie Packaging features a predominantly red background; a prominent cookie consisting of a tan cream filling sandwiched between two slightly darker tan biscuits marked with protruding vertical and horizontal lines which intersect to form a checkered pattern, and which is slightly slanted and surrounded by a halo; a thick, stylized white font designating the product name, which is in a curve shape and partially covers the cookie, and of which the first letter of each word is capitalized; and a logo in white letters, surrounded by a thin white shape, and enclosed in a red background in the upper left corner.

**ANSWER:**

Aldi denies the allegations of Paragraph 46.

**COMPLAINT ¶47:**

The Infringing Peanut Butter Cookie Packaging and the NUTTER BUTTER Trade Dress are used in connection with identical goods, namely, packaged peanut butter sandwich cookies.

**ANSWER:**

Aldi admits that it sells peanut butter crème filled sandwich cookies. Aldi denies the

remaining allegations of Paragraph 47.

**COMPLAINT ¶48:**

Defendant adopted the Infringing Peanut Butter Cookie Packaging with knowledge of Mondelēz's prior rights in the NUTTER BUTTER Trade Dress and with intent to mislead or confuse consumers into believing that Defendant's goods are provided, sponsored, or approved by Mondelēz.

**ANSWER:**

Aldi denies the allegations of Paragraph 48.

**COMPLAINT ¶49:**

Given the distinctiveness of the NUTTER BUTTER Trade Dress, Defendant's use of nearly identical packaging for identical products, and in the same marketing channels, to the same class of consumers, Defendant is likely to cause confusion regarding the source and nature

318228615v.2

of Defendant's products, and/or that Defendant's products come from, are affiliated with, or are sponsored or endorsed by Mondelēz, when in fact no such affiliation, sponsorship, or endorsement exists, lessens the distinctiveness of the NUTTER BUTTER Trade Dress, and unfairly competes. As a result of Defendant's wrongful activities, consumers have been misled and will continue to be misled, the NUTTER BUTTER Trade Dress has been and will continue to be diluted, Defendant has been unjustly enriched, and Mondelēz has suffered and continues to suffer irreparable harm and economic injury.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 49 of the Complaint contain

conclusions of law as to which no response is required. To the extent any response is required,

Aldi denies the allegations.

## MONDELĒZ'S CHIPS AHOY! TRADE DRESS

**COMPLAINT ¶50:**

The CHIPS AHOY! brand was first introduced to the United States market in 1963 with the CHIPS AHOY! chocolate chip cookies (the "Chips Ahoy! cookies").

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 50. To the extent an answer to Paragraph 50 is required, Paragraph 50 is denied.

**COMPLAINT ¶51:**

Since at least as early as 2010, Mondelēz has marketed and sold Chips Ahoy! cookies in a highly distinctive product packaging (the "CHIPS AHOY! Trade Dress") which consumers associate with Mondelēz. The CHIPS AHOY! Trade Dress is depicted below:



**ANSWER:**

Aldi denies that the color blue or the image of a chocolate chip cookie are highly distinctive. Aldi lacks sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 51. To the extent an answer to Paragraph 51 is required, Paragraph 51 is denied.

**COMPLAINT ¶52:**

The CHIPS AHOY! Trade Dress features the following inherently distinctive elements:

a. A prominent chocolate chip cookie, of which only a portion is visible, to the right of the product name;

b. A predominantly blue background;

c. A thick font designating the product name, which is predominantly dark blue with red accents, against a white background;

d. A logo in white letters, surrounded by a thin white shape, and enclosed in a red background in the upper left corner.

**ANSWER:**

Aldi denies the allegations in Paragraph 52.

**COMPLAINT ¶53:**

Mondelēz has acquired common law rights owing to a long, rich history of continuously using prominent elements of the CHIPS AHOY! Trade Dress, as demonstrated in Exhibit A.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 53 of the Complaint contain conclusions of law as to which no response is required. To the extent a response is required, Aldi denies the allegations of Paragraph 53.

**COMPLAINT ¶54:**

The CHIPS AHOY! Trade Dress is unique, distinctive, arbitrary, and non-functional, meaning it is not essential to its purpose and does not affect its cost or quality. Nor is it competitively necessary to use the CHIPS AHOY! Trade Dress in the snack products market. Indeed, there are numerous examples of third parties selling competing products with non-

24

infringing trade dress. *See* Exhibit B. The distinctive features included in the CHIPS AHOY!
Trade Dress serve the purpose of identifying and distinguishing Chips Ahoy! cookies from the
products of other sellers.

**<u>ANSWER:</u>**

Aldi states that the allegations set forth in Paragraph 54 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 54.

**<u>COMPLAINT ¶55:</u>**

Mondelēz has spent hundreds of millions of dollars in the last five years alone in
connection with advertising and promoting its goods featuring the CHIPS AHOY! Trade Dress in
the United States market and has enjoyed substantial sales and success. Indeed, Mondelēz has
sold over 450 million packages featuring the CHIPS AHOY! Trade Dress in the United States
market in the last five years alone. Mondelēz's promotion efforts include, among other things,
print media, internet advertising (including social media), television commercials, sponsorships,
promotions, public relations, in-store promotional and point-of-sale materials.

**<u>ANSWER:</u>**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 55. To the extent an answer to Paragraph 55 is required, Paragraph 55 is denied.

**<u>COMPLAINT ¶56:</u>**

Mondelēz has used and continues to use the CHIPS AHOY! Trade Dress uniformly and
consistently, and as a source identifier of its highly regarded Chips Ahoy! cookies.

**<u>ANSWER:</u>**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 56. To the extent an answer to Paragraph 56 is required, Paragraph 56 is denied.

**<u>COMPLAINT ¶57:</u>**

As a result of its extensive promotional efforts, advertising, and sales, Mondelēz enjoys a
highly valuable reputation and goodwill that is symbolized by its CHIPS AHOY! Trade Dress,
whereby it has become recognized as denoting goods originating from Mondelēz and none other.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 57 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 57.

**DEFENDANT'S WILLFUL INFRINGEMENT OF CHIPS AHOY! TRADE DRESS**

**COMPLAINT ¶58:**

To benefit from the reputation, fame and prestige of the CHIPS AHOY! Trade Dress and
exploit Mondelēz's marketing effort, Defendant is marketing and selling private label packaged
chocolate chip cookies using packaging that blatantly copies the iconic and distinctive elements
of the CHIPS AHOY! Trade Dress (the "Infringing Chocolate Chip Cookie Packaging"). The
Infringing Chocolate Chip Cookie Packaging is likely to cause confusion among consumers.
Representative side-by-side comparisons of Mondelēz's CHIPS AHOY! Trade Dress and the
Infringing Chocolate Chip Cookie Packaging are shown as follows:

 

**ANSWER:**

Aldi admits that it sells packaged chocolate chip cookies. Aldi denies the remaining

allegations in Paragraph 58.

**COMPLAINT ¶59:**

Like the CHIPS AHOY! Trade Dress, the Infringing Chocolate Chip Cookie Packaging
features a prominent chocolate chip cookie, of which only a portion is visible, to the right of the
product name; a predominantly blue background which Mondelēz has featured on its Chips
Ahoy! cookies packaging since 1964; a thick font designating the product name, which is
predominantly dark blue with red accents, against a white background, which Mondelēz has
featured on its Chips Ahoy! packaging since 1994; where both the cookie and product name are
in a substantially similar location on the package as in the CHIPS AHOY! Trade Dress; and a
logo in white letters, surrounded by a thin white shape, and enclosed in a red background in the

upper left corner, which Mondelēz has featured on its Chips Ahoy! cookies packaging since 1972.

**ANSWER:**

Aldi denies the allegations in Paragraph 59.

**COMPLAINT ¶60:**

The Infringing Chocolate Chip Cookie Packaging and the CHIPS AHOY! Trade Dress are used in connection with identical goods, namely, packaged snack chocolate chip cookies.

**ANSWER:**

Aldi admits that it sells packaged chocolate chip cookies. Aldi denies the remaining

allegations in Paragraph 60.

**COMPLAINT ¶61:**

Defendant adopted the Infringing Chocolate Chip Cookie Packaging with knowledge of Mondelēz's prior rights in the CHIPS AHOY! Trade Dress and with intent to mislead or confuse consumers into believing that Defendant's goods are provided, sponsored, or approved by, or affiliated with, Mondelēz.

**ANSWER:**

Aldi denies the allegations in Paragraph 61.

**COMPLAINT ¶62:**

Given the distinctiveness of the CHIPS AHOY! Trade Dress, Defendant's use of nearly identical packaging for identical products, and in the same marketing channels, to the same class of consumers, and is likely to cause confusion regarding the source and nature of Defendant's products, and/or that Defendant's products come from, are affiliated with, or are sponsored or endorsed by Mondelēz, when in fact no such affiliation, sponsorship, or endorsement exists, lessens the distinctiveness of the CHIPS AHOY! Trade Dress, and unfairly competes. As a result of Defendant's wrongful activities, consumers have been misled and will continue to be misled, the CHIPS AHOY! Trade Dress has been and will continue to be diluted, Defendant has been unjustly enriched, and Mondelēz has suffered and continues to suffer irreparable harm and economic injury.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 62 of the Complaint contain

conclusions of law as to which no response is required.  To the extent a response is required, Aldi

denies the allegations of Paragraph 62.

## MONDELĒZ'S NILLA WAFERS TRADE DRESS

**COMPLAINT ¶63:**

The NILLA WAFERS brand was first introduced to the United States market in 1967
with the NILLA WAFERS vanilla wafer cookies (the "Nilla Wafers cookies").

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 63. To the extent an answer to Paragraph 63 is required, Paragraph 63 is denied.

**COMPLAINT ¶64:**

Since at least as early as 2009, Mondelēz has marketed and sold Nilla Wafers cookies in a
highly distinctive product packaging (the "NILLA WAFERS Trade Dress") which consumers
associate with Mondelēz. The NILLA WAFERS Trade Dress is depicted below:



318228615v.2

**ANSWER:**

Aldi denies that the color yellow blue or an ombre effect producing a lighter shade near, one portion of packaging is highly distinctive. Aldi lacks sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 64. To the extent an answer to Paragraph 64 is required, Paragraph 64 is denied.

**COMPLAINT ¶65:**

The NILLA WAFERS Trade Dress underwent a refresh effective January 2025 and will eventually fully replace the above 2009 version on shelves in stores:



**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 65. To the extent an answer to Paragraph 65 is required, Paragraph 65 is denied.

**COMPLAINT ¶66:**

The NILLA WAFERS Trade Dress features the following inherently distinctive elements:

a. A predominantly yellow background with an ombre effect producing a lighter shade near, and a progressively darker shade away from, one portion of the packaging;

318228615v.2

b.      A thick, stylized red font prominently designating the first portion of the product name and a small, red font designating the second portion of the product name, which is positioned underneath the first portion of the product name;

c.      An undulating row of cookies;

d.      A logo in white letters, surrounded by a thin white shape, and enclosed in a red background in the upper left corner.

**ANSWER:**

Aldi denies the allegations of Paragraph 66.

**COMPLAINT ¶67:**

Mondelēz has acquired common law rights owing to a long, rich history of continuously using prominent elements of the NILLA WAFERS Trade Dress with refreshes to the packaging used in connection with Nilla Wafer cookies, as demonstrated in Exhibit A.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 66 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 67.

**COMPLAINT ¶68:**

The NILLA WAFERS Trade Dress is unique, distinctive, arbitrary, and non-functional, meaning it is not essential to its purpose and does not affect its cost or quality. Nor is it competitively necessary to use the NILLA WAFERS Trade Dress in the snack products market. Indeed, there are numerous examples of third parties selling competing products with non-infringing trade dress. *See* Exhibit B. The distinctive features included in the NILLA WAFERS Trade Dress serve the purpose of identifying and distinguishing Nilla Wafers cookies from the products of other sellers.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 68 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 68.

318228615v.2

**COMPLAINT ¶69:**

Mondelēz has spent millions of dollars in the last five years alone in connection with advertising and promoting its goods featuring the NILLA WAFERS Trade Dress in the United States market and has enjoyed substantial sales and success. Indeed, Mondelēz has sold over 100 million packages featuring the NILLA WAFERS Trade Dress in the United States market in the last five years alone. Mondelēz's promotion efforts include, among other things, print media, internet advertising (including social media), television commercials, sponsorships, promotions, public relations, in-store promotional and point-of-sale materials.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 69. To the extent an answer to Paragraph 69 is required, Paragraph 69 is denied.

**COMPLAINT ¶70:**

Mondelēz has used and continues to use the NILLA WAFERS Trade Dress uniformly and consistently, and as a source identifier of its highly regarded Nilla Wafers cookies.

**ANSWER:**

Aldi denies the allegations of Paragraph 70.

**COMPLAINT ¶71:**

As a result of its extensive promotional efforts, advertising, and sales, Mondelēz enjoys a highly valuable reputation and goodwill that is symbolized by its NILLA WAFERS Trade Dress, whereby it has become recognized as denoting goods originating from Mondelēz and none other.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 71 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 71.

**DEFENDANT'S WILLFUL INFRINGEMENT OF NILLA WAFERS TRADE DRESS**

**COMPLAINT ¶72:**

To benefit from the reputation, fame and prestige of the NILLA WAFERS Trade Dress and exploit Mondelēz's marketing effort, Defendant is marketing and selling private label packaged vanilla wafer cookies using packaging that blatantly copies the iconic and distinctive elements of the NILLA WAFERS Trade Dress (the "Infringing Wafer Cookie Packaging"). The Infringing Wafer Cookie Packaging is likely to cause confusion among consumers.

Representative side-by-side comparisons of Mondelēz's NILLA WAFERS Trade Dress and the Infringing Wafer Cookie Packaging are shown as follows:

 

**ANSWER:**

Aldi admits that it sells packaged snack vanilla wafer cookies. Aldi denies the remaining allegations in Paragraph 72.

**COMPLAINT ¶73:**

Like the NILLA WAFERS Trade Dress, the Infringing Wafer Cookie Packaging features a predominantly yellow background with an ombre effect producing a lighter shade near, and a progressively darker shade away from, one portion of the packaging, which Mondelēz has featured on its Nilla Wafers cookies packaging since 2002; a thick, stylized red font prominently designating the first portion of the product name and a small, red font designating the second portion of the product name, which Mondelēz first featured on its Nilla Wafers cookies packaging in 1984, and which is positioned underneath the first portion of the product name; an undulating row of cookies; where both the cookies and the product name are in a substantially similar location on the package as in the NILLA WAFERS Trade Dress; and a logo in white letters, surrounded by a thin white shape, and enclosed in a red background in the upper left corner, which Mondelēz has featured on its Nilla Wafers cookies packaging since 1954.

**ANSWER:**

Aldi denies the allegations in Paragraph 73.

**COMPLAINT ¶74:**

The Infringing Wafer Cookie Packaging and the NILLA WAFERS Trade Dress are used in connection with identical goods, namely, packaged snack vanilla wafer cookies.

**ANSWER:**

Aldi admits that it sells packaged snack vanilla wafer cookies. Aldi denies the remainder of the allegations in Paragraph 74.

**COMPLAINT ¶75:**

Defendant adopted the Infringing Wafer Cookie Packaging with knowledge of Mondelēz's prior rights in the NILLA WAFERS Trade Dress and with intent to mislead or confuse consumers into believing that Defendant's goods are provided, sponsored, or approved by, or affiliated with, Mondelēz.

**ANSWER:**

Aldi denies the allegations in Paragraph 75.

**COMPLAINT ¶76:**

Given the distinctiveness of the NILLA WAFERS Trade Dress, Defendant's use of nearly identical packaging for identical products, and in the same marketing channels, to the same class of consumers, and is likely to cause confusion regarding the source and nature of Defendant's products, and/or that Defendant's products come from, are affiliated with, or are sponsored or endorsed by Mondelēz, when in fact no such affiliation, sponsorship, or endorsement exists, lessens the distinctiveness of the NILLA WAFERS Trade Dress, and unfairly competes. As a result of Defendant's wrongful activities, consumers have been misled and will continue to be misled, the NILLA WAFERS Trade Dress has been and will continue to be diluted, Defendant has been unjustly enriched, and Mondelēz has suffered and continues to suffer irreparable harm and economic injury.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 76 of the Complaint contain conclusions of law as to which no response is required. To the extent a response is required, Aldi denies the allegations of Paragraph 76.

**MONDELĒZ'S RITZ TRADE DRESS**

**COMPLAINT ¶77:**

The RITZ brand was first introduced to the United States market in 1934 with the RITZ crackers ("Ritz crackers").

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 77. To the extent an answer to Paragraph 77 is required, Paragraph 77 is denied.

**COMPLAINT ¶78:**

Since at least as early as 2021, Mondelēz has marketed and sold Ritz crackers in a highly distinctive product packaging (the "RITZ Trade Dress"), which consumers associate with Mondelēz. The RITZ Trade Dress is depicted below:



**ANSWER:**

Aldi denies that the color red, the image of a cracker topped with cheese, the image of a

cracker with hexagonal punctures is highly distinctive. Aldi lacks sufficient information to form

a belief as to the truth of the remaining allegations in Paragraph 78. To the extent an answer to

Paragraph 78 is required, Paragraph 78 is denied.

**COMPLAINT ¶79:**

The RITZ Trade Dress features the following inherently distinctive elements:

a.   A predominantly red background;

b.   A large, thick yellow font prominently designating a portion of the product name, which is in all capital letters and begins with the letter `It,' and a small, thin, font for the word `CRACKERS' in all capital letters, which is positioned underneath the first portion of the product name, against a background consisting of a blue sphere outlined in yellow;

34

     c.       A cracker with punctures forming a hexagon and an additional puncture in the center of a cracker;

     d.       A cracker topped with a thin piece of cheese;

     e.       Visible shadows underneath crackers;

     f.       A logo in white letters, surrounded by a thin white shape, and enclosed in a red background in the upper left corner.

**ANSWER:**

Aldi denies the allegations of Paragraph 79.

**COMPLAINT ¶80:**

Mondelēz has acquired common law rights owing to a long, rich history of continuously using prominent elements of the RITZ Trade Dress, as demonstrated in Exhibit A.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 80 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 80.

**COMPLAINT ¶81:**

The RITZ Trade Dress is unique, distinctive, arbitrary, and non-functional, meaning it is not essential to its purpose and does not affect its cost or quality. Nor is it competitively necessary to use the RITZ Trade Dress in the snack products market. Indeed, there are numerous examples of third parties selling competing products with non-infringing trade dress. *See* Exhibit B. The distinctive features included in the RITZ Trade Dress serve the purpose of identifying and distinguishing Ritz crackers from the products of other sellers.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 81 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 81.

**COMPLAINT ¶82:**

Mondelēz has spent hundreds of millions of dollars in the last five years alone in connection with advertising and promoting its goods featuring the RITZ Trade Dress in the

318228615v.2

United States market and has enjoyed substantial sales and success. Indeed, Mondelēz has sold over 700 million packages featuring the RITZ Trade Dress in the United States market in the last five years alone. Mondelēz's promotion efforts include, among other things, print media, internet advertising (including social media), television commercials, sponsorships, promotions, public relations, in-store promotional and point-of-sale materials.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 82. To the extent an answer to Paragraph 82 is required, Paragraph 82 is denied.

**COMPLAINT ¶83:**

Mondelēz has used and continues to use the RITZ Trade Dress uniformly and consistently, and as a source identifier, of its highly regarded Ritz crackers.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 83. To the extent an answer to Paragraph 83 is required, Paragraph 83 is denied.

**COMPLAINT ¶84:**

As a result of its extensive promotional efforts, advertising, and sales, Mondelēz enjoys a highly valuable reputation and goodwill that is symbolized by its RITZ Trade Dress, whereby it has become recognized as denoting goods originating from Mondelēz and none other.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 84 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 84.

**DEFENDANT'S WILLFUL INFRINGEMENT OF RITZ TRADE DRESS**

**COMPLAINT ¶85:**

To benefit from the reputation, fame and prestige of the RITZ Trade Dress and exploit Mondelēz's marketing effort, Defendant began marketing and selling private label packaged snack crackers using packaging that blatantly copies the iconic and distinctive elements of the RITZ Trade Dress (the "Infringing Cracker Packaging"). The Infringing Cracker Packaging is likely to cause confusion among consumers. Representative side-by-side comparisons of Mondelēz's RITZ Trade Dress and the Infringing Cracker Packaging are shown as follows:

 

**ANSWER:**

Aldi admits that it sells packaged snack crackers. Aldi denies the remaining allegations of

Paragraph 85.

**COMPLAINT ¶86:**

Like the RITZ Trade Dress, the Infringing Cracker Packaging features a predominantly red background, which Mondelēz has featured on its Ritz crackers packaging since 1934; a large, thick font prominently designating a portion of the product name, which is in all capital letters and begins with the letter `It,' which Mondelēz has featured on its Ritz crackers packaging since 1934, and a small, thin, font for the word `CRACKERS' in all capital letters, which is positioned underneath the former portion of the product name, which Mondelēz has used since 1948, against a background consisting of a blue shape which Mondelēz has used since 1934, outlined in yellow; a cracker with punctures forming a hexagon and an additional puncture in the center of the cracker, which Mondelēz has featured on its Ritz crackers packaging since 1934; a cracker topped with a thin piece of cheese, which Mondelēz has featured on its Ritz crackers packaging since 2006; and visible shadows underneath crackers, which Mondelēz has featured on its Ritz crackers packaging since 1994. Further, the packaging of both products features the parties' respective logos in white letters in the upper left corner of the packaging, which Mondelēz has featured on its Ritz crackers packaging since 1952.

**ANSWER:**

Aldi denies the allegations of Paragraph 86.

**COMPLAINT ¶87:**

The Infringing Cracker Packaging and the RITZ Trade Dress are used in connection with identical goods, namely, packaged snack crackers.

**ANSWER:**

Aldi admits that it sells packaged snack crackers. Aldi denies the remaining allegations

of Paragraph 87.

**COMPLAINT ¶88:**

Defendant adopted the Infringing Cracker Packaging with knowledge of Mondelēz's prior rights in the RITZ Trade Dress and with intent to mislead or confuse consumers into believing that Defendant's goods are provided, sponsored, or approved by, or affiliated with, Mondelēz.

**ANSWER:**

Aldi denies the allegations of Paragraph 88.

**COMPLAINT ¶89:**

Given the distinctiveness of the RITZ Trade Dress, Defendant's use of nearly identical packaging for identical products, and in the same marketing channels, to the same class of consumers, and is likely to cause confusion regarding the source and nature of Defendant's products, and/or that Defendant's products come from, are affiliated with, or are sponsored or endorsed by Mondelēz, when in fact no such affiliation, sponsorship, or endorsement exists, lessens the distinctiveness of the RITZ Trade Dress, and unfairly competes. As a result of Defendant's wrongful activities, consumers have been misled and will continue to be misled, the RITZ Trade Dress has been and will continue to be diluted, Defendant has been unjustly enriched, and Mondelēz has suffered and continues to suffer irreparable harm and economic injury.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 89 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 89.

**MONDELĒZ'S PREMIUM TRADE DRESS**

**COMPLAINT ¶90:**

The PREMIUM saltine crackers ("Premium saltine crackers") were first introduced to the United States market in 1876.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 90. To the extent an answer to Paragraph 90 is required, Paragraph 90 is denied.

**COMPLAINT ¶91:**

Since at least as early as 2011, Mondelēz has marketed and sold Premium saltine crackers in a highly distinctive product packaging (the "PREMIUM Trade Dress") which consumers associate with Mondelēz. The PREMIUM Trade Dress is depicted below:



**ANSWER:**

Aldi denies that the color combination of light blue and white background, the use of a

product name in blue font which is darker than the background and/or use of all capital letters in

the center of a package and aligned to the left, the use of the word "original" and/or the use of an

image of soup in connection with crackers is highly distinctive. Aldi denies the remaining

allegations of Paragraph 91.

**COMPLAINT ¶92:**

The PREMIUM Trade Dress features the following inherently distinctive elements:

a.      A light blue and white background;

b.      Prominent use of the product name in a blue font, which is darker than the background, in all capital letters in the center of the packaging and aligned to the left;

c.      Use of the word `original' in a light blue font above the product name;

    d.      A white, blue-rimmed bowl of red soup positioned next to crackers on the far right side of the packaging and cut off by the right edge of the packaging;

    e.      A logo in white letters, surrounded by a thin white shape, and enclosed in a red background in the upper left corner.

**ANSWER:**

Aldi denies the allegations of Paragraph 92.

**COMPLAINT ¶93:**

Mondelēz has acquired common law rights owing to a long, rich history of continuously using prominent elements of the PREMIUM Trade Dress as demonstrated in Exhibit A.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 93 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 93.

**COMPLAINT ¶94:**

The PREMIUM Trade Dress is unique, distinctive, arbitrary, and non-functional, meaning it is not essential to its purpose and does not affect its cost or. Nor is it competitively necessary to use the PREMIUM Trade Dress in the snack products market. Indeed, there are numerous examples of third parties selling competing products with non-infringing trade dress. *See* Exhibit B. The distinctive features included in the PREMIUM Trade Dress serve the purpose of identifying and distinguishing Premium saltine crackers from the products of other sellers.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 94 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 94.

**COMPLAINT ¶95:**

Mondelēz has spent millions of dollars over the last five years alone in connection with advertising and promoting its goods featuring PREMIUM Trade Dress in the United States and has enjoyed substantial sales and success. Indeed, Mondelēz has sold over 400 million packages featuring the PREMIUM Trade Dress in the United States market since 2020 alone. Mondelēz's promotion efforts include, among other things, print media, internet advertising (including social

media), television commercials, sponsorships, promotions, public relations, in-store promotional and point-of-sale materials.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 95. To the extent an answer to Paragraph 90 is required, Paragraph 90 is denied.

**COMPLAINT ¶96:**

Mondelēz has used and continues to use the PREMIUM Trade Dress uniformly and consistently, and as a source identifier of its highly regarded Premium saltine crackers.

**ANSWER:**

Aldi lacks sufficient information to form a belief as to the truth of the allegations in

Paragraph 96. To the extent an answer to Paragraph 96 is required, Paragraph 96 is denied.

**COMPLAINT ¶97:**

As a result of its extensive promotional efforts, advertising, and sales, Mondelēz enjoys a highly valuable reputation and goodwill that is symbolized by its PREMIUM Trade Dress, whereby it has become recognized as denoting goods originating from Mondelēz and none other.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 97 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 97.

**DEFENDANT'S WILLFUL INFRINGEMENT OF PREMIUM TRADE DRESS**

**COMPLAINT ¶98:**

Defendant is marketing and selling private label packaged saltine crackers using packaging that blatantly copies the iconic and distinctive elements of the PREMIUM Trade Dress (the "Infringing Saltine Cracker Packaging"). The Infringing Saltine Cracker Packaging is likely to cause confusion among consumers. Representative side-by-side comparisons of Mondelēz's PREMIUM Trade Dress and the Infringing Saltine Cracker Packaging are shown as follows:

 

**ANSWER:**

Aldi admits that it sells packaged saltine crackers.   Aldi denies the remaining allegations

of Paragraph 98.

**COMPLAINT ¶99:**

Like the PREMIUM Trade Dress, the Infringing Saltine Cracker Packaging features a light blue and white background; prominent use of the product name in a blue font, which is darker than the background, in all capital letters in the center of the packaging and aligned to the left; use of the word `original' in a light blue font above the product name, which Mondelēz has featured on its Premium saltine crackers packaging since 1994; and a white, blue-rimmed bowl of red soup positioned next to crackers, which Mondelēz has featured on its Premium saltine crackers packaging since 1986, on the far right side of the packaging and cut off by the right edge of the packaging. Further, the packaging of both products features the parties' respective logos in white letters in the upper left corner, which Mondelēz has featured on its Premium saltine crackers packaging since 1952.

**ANSWER:**

Aldi denies the allegations of Paragraph 99.

**COMPLAINT ¶100:**

The Infringing Saltine Cracker Packaging and the PREMIUM Trade Dress are used in connection with identical goods, namely, packaged saltine crackers.

**ANSWER:**

Aldi admits that it sells packaged saltine crackers.  Aldi denies the remaining allegations

of Paragraph  100.

**COMPLAINT ¶101:**

Defendant adopted the Infringing Saltine Cracker Packaging with knowledge of Mondelēz's prior rights in the PREMIUM Trade Dress and with intent to mislead or confuse

consumers into believing that Defendant's goods are provided, sponsored, or approved by, or affiliated with Mondelēz.

**ANSWER:**

Aldi denies the allegations of Paragraph 101.

**COMPLAINT ¶102:**

Given the distinctiveness of the PREMIUM Trade Dress, Defendant's use of nearly identical packaging for identical products, and in the same marketing channels, to the same class of consumers, and is likely to cause confusion regarding the source and nature of Defendant's products, and/or that Defendant's products come from, are affiliated with, or are sponsored or endorsed by Mondelēz, when in fact no such affiliation, sponsorship, or endorsement exists, lessens the distinctiveness of the PREMIUM Trade Dress, and unfairly competes. As a result of Defendant's wrongful activities, consumers have been misled and will continue to be misled, Defendant has been unjustly enriched, and Mondelēz has suffered and continues to suffer irreparable harm and economic injury.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 102 of the Complaint contain conclusions of law as to which no response is required. To the extent a response is required, Aldi denies the allegations of Paragraph 102.

## FIRST CAUSE OF ACTION

### Federal Trade Dress Infringement

*15 U.S.C. §1125(a)*

**COMPLAINT ¶103:**

Mondelēz realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 114 (sic) as though fully set forth herein.

**ANSWER:**

Aldi believes that there is a typographical error in the Complaint with regard to the Paragraphs realleged. Aldi restates and reincorporates its answers to Paragraphs 1-102, as though fully set forth herein.

**COMPLAINT ¶104:**

The OREO Trade Dress, WHEAT THINS Trade Dress, NUTTER BUTTER Trade Dress, CHIPS AHOY! Trade Dress, NILLA WAFERS Trade Dress, RITZ Trade Dress, and PREMIUM Trade Dress (collectively, the "Mondelēz Trade Dresses") are inherently distinctive.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 104 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 104.

**COMPLAINT ¶105:**

In the alternative, the Mondelēz Trade Dresses have acquired distinctiveness through extensive and long-standing, exclusive use.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 105 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 105.

**COMPLAINT ¶106:**

The Mondelēz Trade Dresses are non-functional.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 106 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 106.

**COMPLAINT ¶107:**

Mondelēz's creation, adoption, and use of the Mondelēz Trade Dresses predates Defendant's adoption and use of the Infringing Cookie Sandwich Packaging, Infringing Wheat Cracker Packaging, Infringing Peanut Butter Cookie Packaging, Infringing Chocolate Chip Cookie Packaging, Infringing Wafer Cookie Packaging, Infringing Cracker Packaging, and Infringing Saltine Cracker Packaging, respectively (collectively, the "Infringing Products").

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 107 of the Complaint contain

conclusions of law as to which no response is required. To the extent that the allegations set

forth in Paragraph 107 allege facts, Aldi lacks sufficient information to form a belief as to the

truth of the allegations in Paragraph 107. To the extent an answer to Paragraph 107 is required,

Paragraph 107 is denied.

**COMPLAINT ¶108:**

Defendant continues to use the Infringing Products in connection with private label
cookie and cracker snacks, without authorization from Mondelēz, and engage in a pattern and
practice of unlawfully copying Mondelēz Trade Dresses.

**ANSWER:**

Aldi denies that its products are infringing. Aldi admits that it is still selling certain of

the products that Mondelez has referenced in this Complaint. Aldi denies the remaining

allegations of Paragraph 108.

**COMPLAINT ¶109:**

Defendant's acts have caused and are likely to cause confusion, mistake, or deception in
the minds of the public as to affiliation, connection, or association of Mondelēz with Defendant,
and as to the origin, sponsorship, or approval by Mondelēz of Defendant's goods.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 109 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 109.

**COMPLAINT ¶110:**

Defendant's acts constitute willful trade dress violation of the Mondelēz Trade Dresses in
violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendant has a pattern and
practice of copying Mondelēz's snack product packaging.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 110 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies the allegations of Paragraph 110.

**COMPLAINT ¶111:**

Defendant's acts have injured Mondelēz and damaged Mondelēz in an amount to be
determined at trial.

**ANSWER:**

Aldi denies the allegations of Paragraph 111.

**COMPLAINT ¶112:**

Defendant's acts have caused and will continue to cause irreparable injury to Mondelēz.

**ANSWER:**

Aldi denies that Mondelez has been caused irreparable injury. Aldi denies the allegations

of Paragraph 112.

**COMPLAINT ¶113:**

Such irreparable injury will continue unless Defendant is preliminarily and permanently
enjoined by this Court from further violation of Mondelēz's rights, and for which Mondelēz has
no adequate remedy at law.

**ANSWER:**

Aldi denies that Mondelez has suffered irreparable injury. Aldi denies the allegations of

Paragraph 113.

**COMPLAINT ¶114:**

Defendant, by its marketing and sale of the Infringing Products, seeks to ride the coattails
of the substantial reputation of the Mondelēz Trade Dresses in order to benefit from its power of
attraction, fame and/or prestige, and to exploit the marketing effort expended by Mondelēz.
Defendant's clear intent is to take advantage of the reputation of the Mondelēz Trade Dresses to
assist it to sell the Infringing Products.

318228615v.2

**ANSWER:**

Aldi denies the allegations of Paragraph 114.

## SECOND CAUSE OF ACTION

### Federal Trademark Dilution

*15 U.S.C. § 1125(c)*

**COMPLAINT ¶115:**

Mondelēz realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 126 (sic) as though fully set forth herein.

**ANSWER:**

Aldi believes that there is a typographical error in the Complaint with regard to the

Paragraphs realleged.   Aldi restates and reincorporates its answers to Paragraphs 1-114 as

though fully set forth herein.

**COMPLAINT ¶116:**

The OREO Trade Dress is distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 116 of the Complaint contain

conclusions of law as to which no response is required.  To the extent a response is required, Aldi

denies the allegations of Paragraph 116.

**COMPLAINT ¶117:**

The WHEAT THINS Trade Dress is distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 117 of the Complaint contain

conclusions of law as to which no response is required.  To the extent a response is required, Aldi

denies the allegations of Paragraph 117.

**COMPLAINT ¶118:**

The NUTTER BUTTER Trade Dress is distinctiveness and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 118 of the Complaint contain conclusions of law as to which no response is required. To the extent a response is required, Aldi denies the allegations of Paragraph 118.

**COMPLAINT ¶119:**

The CHIPS AHOY! trade dress is distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 119 of the Complaint contain conclusions of law as to which no response is required. To the extent a response is required, Aldi denies the allegations of Paragraph 119.

**COMPLAINT ¶120:**

The NILLA WAFERS Trade Dress is distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 120 of the Complaint contain conclusions of law as to which no response is required. To the extent a response is required, Aldi denies the allegations of Paragraph 120.

**COMPLAINT ¶121:**

The RITZ Trade Dress is distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 121 of the Complaint contain conclusions of law as to which no response is required. To the extent a response is required, Aldi denies the allegations of Paragraph 121.

**COMPLAINT ¶122:**

Defendant continues to use the Infringing Cookie Sandwich Packaging, Infringing Wheat Cracker Packaging, Infringing Peanut Butter Cookie Packaging, Infringing Chocolate Chip Cookie Packaging, Infringing Wafer Cookie Packaging, and Infringing Cracker Packaging in connection with private label snack cookies, without Mondelēz's authorization.

**ANSWER:**

Aldi denies that its products are infringing. Aldi admits that it is still selling products that Mondelez has referenced in this Complaint. Aldi denies the remaining allegations of Paragraph 122.

**COMPLAINT ¶123:**

Defendant's conduct constitutes trademark dilution of the OREO Trade Dress, the WHEAT THINS Trade Dress, the NUTTER BUTTER Trade Dress, the CHIPS AHOY! Trade Dress, the NILLA WAFERS Trade Dress, and the RITZ Trade Dress in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 120 of the Complaint contain conclusions of law as to which no response is required. To the extent a response is required, Aldi denies the allegations of Paragraph 120.

**COMPLAINT ¶124:**

Defendant's unlawful conduct is willful. Defendant has a pattern and practice of copying Mondelēz's snack product packaging.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 124 of the Complaint contain conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies that it has engaged in unlawful conduct and denies the remaining allegations of Paragraph

124.

**COMPLAINT ¶125:**

As a result of Defendant's conduct, Mondelēz has suffered and will continue to suffer damage.

**ANSWER:**

Aldi denies the allegations of Paragraph 125.

**COMPLAINT ¶126:**

Defendant's activities have caused and will continue to cause irreparable harm to Mondelēz and to the substantial goodwill embodied in the OREO Trade Dress, the WHEAT THINS Trade Dress, the NUTTER BUTTER Trade Dress, the CHIPS AHOY! Trade Dress, the NILLA WAFERS Trade Dress, and the RITZ Trade Dress, and such acts will continue unless restrained by this Court.

**ANSWER:**

Aldi denies the allegations of Paragraph 126.

### THIRD CAUSE OF ACTION

**Unfair Competiton**

*815 ILCS 505 et seq.*

**COMPLAINT ¶127:**

Mondelēz realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 138 (sic) as though fully set forth herein.

**ANSWER:**

Aldi believes that there is a typographical error in Paragraph 127 with regard to the

Paragraphs realleged.   Aldi restates and reincorporates its answers to Paragraphs 1-126 as

though fully set forth herein.

**COMPLAINT ¶128:**

Defendant, by its marketing and sale of the Infringing Products, seeks to ride the coattails of the substantial reputation of the Mondelēz Trade Dresses to benefit from its power of

attraction, fame and/or prestige, and to exploit the marketing effort expended by Mondelēz. Defendant's clear intent is to take advantage of the reputation of the Mondelēz Trade Dresses in order to assist it to sell the Infringing Products.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 128 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies that it has engaged in unlawful conduct and denies the remaining allegations of Paragraph

128.

**COMPLAINT ¶129:**

Defendant's use of the Infringing Products described above constitute unfair competition in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.*, as they are likely to deceive and mislead the public.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 129 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies that it has engaged in unlawful conduct and denies the remaining allegations of Paragraph

129.

**COMPLAINT ¶130:**

Defendant's acts of unfair competition have caused and will continue to cause Mondelēz irreparable harm. Mondelēz has no adequate remedy at law for Defendant's unfair competition.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 130 of the Complaint contain

conclusions of law as to which no response is required. To the extent a response is required, Aldi

denies that it has engaged in unlawful conduct and denies the remaining allegations of Paragraph

130.

**COMPLAINT ¶131:**

Mondelēz is entitled to judgment enjoining and restraining Defendant from engaging in further acts of infringement and unfair competition.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 131 of the Complaint contain

conclusions of law as to which no response is required.  To the extent a response is required, Aldi

denies that it has engaged in unlawful conduct and denies the remaining allegations of Paragraph

131.

**COMPLAINT ¶132:**

Defendant intended to take advantage of the reputation of Mondelēz's Trade Dresses to assist it in selling the Infringing Products. Defendant has a pattern and practice of copying Mondelēz's snack product packaging. Defendant has achieved significant sales of the Infringing Products over a short period of time without any promotion. Defendant took advantage of the reputation Mondelēz has developed in its products. Defendant's sales of the Infringing Products without promotion evidences the advantage to Defendant and that advantage is unfair because it enabled Defendant to profit from Mondelēz's investment in developing and promoting its branded products, rather than Defendant competing purely on quality and price and/or its own promotional efforts.

**ANSWER:**

Aldi denies the allegations of Paragraph 132.

### FOURTH CAUSE OF ACTION

**Dilution**

*Ohio Common Law*

**COMPLAINT ¶133:**

Mondelēz realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 143 (sic)  as though fully set forth herein.

**ANSWER:**

Aldi believes that there is a typographical error in Paragraph 133 with regard to the

Paragraphs realleged.   Aldi restates and reincorporates its answers to Paragraphs 1-132 as

though fully set forth herein.

**COMPLAINT ¶134:**

Defendant continues to use the Infringing Products in connection with cookie and cracker
snacks, without authorization from Mondelēz.

**ANSWER:**

Aldi denies that its products are infringing.   Aldi admits that it is still selling certain of

the products that Mondelez has referenced in this Complaint.    Aldi denies the remaining

allegations of Paragraph 134.

**COMPLAINT ¶135:**

Mondelēz is informed and believes that at least some of the Infringing Products are
manufactured in and distributed from the state of Ohio.

**ANSWER:**

Aldi denies the allegations of Paragraph 135.

**COMPLAINT ¶136:**

Defendant's conduct constitutes trademark dilution of the Mondelēz Trade Dresses in
violation of Ohio common law.

**ANSWER:**

Aldi states that the allegations set forth in Paragraph 136 of the Complaint contain

conclusions of law as to which no response is required.  To the extent a response is required, Aldi

denies that it has engaged in unlawful conduct and denies the remaining allegations of Paragraph

136.

318228615v.2

**COMPLAINT ¶137:**

Defendant's unlawful conduct is willful. Defendant has a pattern and practice of copying Mondelēz's snack product packaging.

**ANSWER:**

Aldi denies that it has engaged in unlawful conduct.  Aldi denies the remaining

allegations of Paragraph 137.

**COMPLAINT ¶138:**

As a result of Defendant's conduct, Mondelēz has suffered and will continue to suffer damage.

**ANSWER:**

Aldi denies the allegations of Paragraph 138.

**COMPLAINT ¶139:**

Defendant's activities have caused and will continue to cause irreparable harm to Mondelēz and to the substantial goodwill embodied in the Mondelēz Trade Dresses, and such acts will continue unless restrained by this Court.

**ANSWER:**

Aldi denies the allegations of Paragraph 139.

## GENERAL DENIAL

WHEREFORE, Aldi denies that Plaintiffs have any viable claims against Aldi or that

Plaintiffs are entitled to any relief whatsoever. Aldi requests that the Court enter a judgment in

its favor, and that the Court order any other relief that it deems proper, including but not limited

to, an award of costs and attorneys' fees under applicable law.

## AFFIRMATIVE DEFENSES

Aldi asserts the following affirmative defenses without assuming any burdens of

production or proof that, pursuant to law, belongs to Plaintiffs. Aldi expressly reserves its right to

assert any and all counterclaims, cross claims, and/or additional defenses, including affirmative defenses, that may become apparent at any time during the course of this litigation.

### First Affirmative Defense—Mondelez International, Inc. Has No Protectable Rights

The alleged trade dress rights at issue are alleged to be owned by Plaintiff Intercontinental Great Brands, LLC, the owner of the trademarks associated with the alleged trade dress rights. Plaintiffs do not allege that Plaintiff Mondelez International, Inc. has protectable rights in and to the alleged trade dress. Therefore, the Complaint fails to state a claim upon which relief can be granted for Mondelez International, Inc.

### Second Affirmative Defense- Laches

Plaintiffs' claims are barred, in whole or in part, by the equitable doctrine of laches. Aldi has utilized packaging for its products (and relevant aspects thereof, e.g. color scheme—blue and blue and white in connection with sandwich cookies and chocolate chip cookies, red in connection with round snack crackers and peanut butter cookies, yellow in connection with thin wheat crackers) for many years. Plaintiffs have known of such use for many years and delayed in taking any action and have expressly or implicitly consented to the actions underlying the claims against Aldi.

### Third Affirmative Defense- Acquiescence as to Aldi

Plaintiffs' claims are barred, in whole or in part, by acquiescence as to Aldi. Aldi has utilized packaging for its products (and relevant aspects thereof, e.g. color scheme—blue and blue and white in connection with sandwich cookies and chocolate chip cookies, red in connection with round snack crackers and peanut butter cookies, yellow in connection with thin wheat crackers) for many years. Plaintiffs have known of such use for many years, expressed confidential concerns but took no action for years and therefore have expressly or implicitly acquiesced to the actions underlying the claims against Aldi.

### Fourth Affirmative Defense- Acquiescence as to the Industry

Plaintiffs' claims are barred, in whole or in part, by acquiescence as to the industry. For each of the alleged product trade dress(es) in suit, numerous competitors have utilized packaging for their products (and relevant aspects thereof, e.g. color scheme—blue and blue and white in connection with sandwich cookies and chocolate chip cookies, red in connection with round snack crackers and peanut butter cookies, yellow in connection with thin wheat crackers) for many years and such product have been sold in the same stores for many years. Plaintiffs have known of such use for many years, and therefore have diluted their own alleged trade dress by expressly or implicitly acquiescing to the use trade dress (es) that are substantially similar to and/or contain identical or substantially similar components to those used by Aldi.

### Fifth Affirmative Defense-Waiver

Plaintiffs' claims are barred, in whole or in part, in that it has engaged in conduct and activities sufficient to constitute a total or partial waiver of the rights or causes of actions asserted or that may be asserted, or remedies sought or that may be sought, against Aldi.

### Sixth Affirmative Defense-Estoppel

Plaintiffs' claims are barred, in whole or in part, by the equitable doctrine of estoppel, in that Plaintiffs' own actions and/or inaction has enabled the activities now alleged to be the basis of the causes of actions asserted or that may be asserted, or remedies sought or that may be sought, against Aldi.

### Seventh Affirmative Defense-No Likelihood of Confusion

Plaintiffs' claims are barred, in whole or in part, in that there is no likelihood of confusion caused by Aldi's offer for sale and/or sale of the products at issue.

### Eighth Affirmative Defense-Unclean Hands

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

318228615v.2

### Ninth Affirmative Defense-Lack of Uniform Trade Dress

Plaintiffs' claims are barred, in whole or in part, in that each of Plaintiffs' alleged trade dress (es) is used inconsistently and/or is not sufficiently uniform to merit the breadth of protection sought herein.

### Tenth Affirmative Defense-No Secondary Meaning

Plaintiffs' claims are barred, in whole or in part, in that each of Plaintiffs' alleged trade dress(es) has not acquired secondary meaning.

### Eleventh Affirmative Defense-Not Distinctive

Plaintiffs' claims are barred, in whole or in part, in that each of Plaintiffs' alleged trade dress(es) is not inherently or otherwise distinctive.

### Twelfth Affirmative Defense- Functional

Plaintiffs' claims are barred, in whole or in part, in that each of Plaintiffs' alleged trade dress(es) and/or material portions thereof are functional and/or aesthetically functional.

### Thirteenth Affirmative Defense-Abandonment of Alleged NILLA Wafer Trade Dress

Plaintiffs' claims with respect to the alleged NILLA Wafer Trade Dress are barred, in whole or in part, in that Plaintiffs have abandoned the NILLA Wafer Trade Dress utilized prior to January 2025.

### Fourteenth Affirmative Defense -Lack of Standing Re: Federal Dilution Claim

Plaintiff Mondelez International, Inc. is not alleged to be the owner of any trade dress rights, and has no standing to pursue a dilution claim under 15 U.S.C. § 1125(c).

### Fifteenth Affirmative Defense- Lack of Standing Re: Ohio Common Law Dilution Claim

Plaintiff Mondelez International, Inc. is not alleged to be the owner of any trade dress rights, and has no standing to pursue a dilution claim under Ohio common law.

Respectfully submitted,


By: _/s/ Bart A. Lazar_
      Bart A. Lazar
      Seyfarth Shaw LLP
      233 S. Wacker Drive, Suite 8000
      Chicago, IL  60606
      (312) 460-5986
      blazar@seyfarth.com
      Counsel for Aldi Inc.

318228615v.2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that Aldi's Answer to Plaintiffs' Complaint will be served upon:

> James T. Hultquist (SBN 6204320)
> Email: jhultquist@reedsmith.com
> REED SMITH LLP
> 10 South Wacker Drive
> Chicago, IL 60606-7507
>
> Robert N. Phillips (SBN 120970) *(Pro Hac Vice)*
> Email: robphillips@reedsmith.com
>
> Seth B. Herring (SBN 253907) *(Pro Hac Vice)*
> Email: sherring@reedsmith.com
> Fatima Mobin (SBN 354140) *(Pro Hac Vice)*
> Email: fmobin@reedsmith.com
> REED SMITH LLP
> 101 Second Street
> Suite 1800
> San Francisco, CA 94105-3659

via ECF system on this 14th day of November, 2025.

*/s/ Bart A. Lazar*